# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN PARTIDA GAONA,<br><br>    Plaintiff,<br><br>    v.<br><br>KUSHNER, et al.,<br><br>    Defendants.<br>_____/ | CASE NO. 1:06-cv-00865-SMS PC<br><br>ORDER DISMISSING SECOND AMENDED COMPLAINT, WITH LEAVE TO AMEND<br><br>(Doc. 29)<br><br>THIRTY-DAY DEADLINE |

**Screening Order**

**I.    Procedural History**

Plaintiff Martin Partida Gaona, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on July 10, 2006. On May 13, 2008, the Court dismissed Plaintiff's complaint, with leave to amend. Plaintiff filed an amended complaint on July 10, 2008, and then filed a second amended complaint on March 6, 2009.

For the reasons set forth below, the Court finds that Plaintiff's second amended complaint fails to state a claim upon which relief may be granted. After the issuance of the first screening order, there was a "significant change" in the pleading standard to which Plaintiff's complaint is held. Moss v. U.S. Secret Service, 572 F.3d 962, 972 (9th Cir. 2009). Due to this change and because it appears Plaintiff may be able to cure the deficiencies, the Court will grant Plaintiff one final opportunity to amend. Moss, 572 F.3d at 972; Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

///

## II. Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555). Facial plausibility demands more than the mere possibility that a defendant committed misconduct, Iqbal at 1950, and while factual allegations are accepted as true, legal conclusion are not, id. at 1949.

## III. Plaintiff's Eight Amendment Medical Care Claims

Plaintiff, who was housed at Pleasant Valley State Prison (PVSP) in Coalinga during the relevant events, brings this action against Medical Director F. Igbinosa; Doctors Kushner, Benyamah, Salazar, B. Matter, and Duenas; and subordinate medical staff members Harper, Brewer, Hayden, Duel, Davis, Mantaras, Maegan, and Diana. Plaintiff alleges that Defendants violated his rights under the Eighth Amendment of the United States Constitution by failing to provide him with proper medical care, and he seeks damages, declaratory relief, and injunctive relief.

### A. Summary of Plaintiff's Allegations

Plaintiff became ill with flu-like symptoms in early July 2005 while at PVSP. Over the course of the month, Plaintiff's health deteriorated, and on August 2, 2005, Defendant Salazar

concluded that Plaintiff was showing the symptoms of Valley Fever, ordered Plaintiff confined to his cell for three days, and prescribed Diflucan twice a day.

Plaintiff became delirious the next day and was in great pain. Because the Diflucan was not delivered to Plaintiff's cell, he was forced to walk approximately two blocks to the medical clinic, which was laborious given his condition. Plaintiff received his medication and was sent back to his cell despite requesting an examination due to dizziness and chest pain. Plaintiff collapsed within five minutes of returning to his cell and was taken by ambulance to the prison's hospital, where he was diagnosed with pneumonia in the left lung.

Plaintiff alleges he subsequently filed a grievance complaining that on August 3, 2005, while he was lying on the floor of his cell, Defendants Brewer told correctional officers that he was faking his pain and medical condition. In another grievance, Plaintiff complained that prior to collapsing in his cell, he told Defendant Harper he was dizzy, having difficulty breathing, and having chest pains but Harper neglected him and refused to give him medical attention. Finally, Plaintiff complained in a grievance that while he was in the hospital on August 3, 2005, Defendant Maegan, in removing Plaintiff's clothing, manhandled Plaintiff by yanking his t-shirt over his head, spoke to him like an animal, and attempted to humiliate him.

On August 6, 2005, Plaintiff asked medical staff for extra nutritional foods and/or juice drinks because he had lost a lot of weight and was weak, and he knew that other prisoners with similar health issues were given extra sack lunches or nutritional foods and drinks. On August 13, 2005, Plaintiff's Diflucan prescription expired and was not renewed for a number of weeks. Plaintiff asked Defendant Hayden on August 17, 2005, to request his vitamins and Ciprofloxacin from the doctor but Hayden told Plaintiff he did not need either one. On August 18, 2005, Plaintiff was tentatively diagnosed with Valley Fever, and on August 22, 2005, Plaintiff submitted a written request for his pneumonia medication and stated that he required proper medical care for his condition but he received no response.

Plaintiff continued to experience pain, exhaustion, shortness of breath, and joint achiness between August 22, 2005, and August 24, 2005, and submitted written requests for medical care. Plaintiff's requests were not responded to and when Plaintiff spoke with Defendant Hayden during

this period of time, Hayden refused to examine or treat Plaintiff despite his description of his symptoms.

On August 25, 2005, someone from the Prison Law Office (PLO) spoke with Defendant Duenas about Plaintiff's rash, ingrown toenail, and stomach and liver pain. Defendant Duenas said Plaintiff's liver pain began when he was taken off of Diflucan. The PLO contact contended that Plaintiff developed stomach and liver pain after taking Griseofulvan for the ingrown toenail, and that Griseofulvan has a hepatotoxic effect and can damage the liver. However, Defendant Duenas reported finding no record that Plaintiff was prescribed Griseofulvan. Plaintiff alleges that he was in fact prescribed the medication in late 2004 and early 2005.

Also on August 25, 2005, Dr. James Carter Thomas provided Defendant Kushner with the results of Plaintiff's August 3 x-rays, and suggested Valley Fever should be considered as a diagnosis. Plaintiff was seen by Dr. Ortiz that day. During that visit, Defendant Hayden reported Plaintiff's weight loss and coughing, and Dr. Ortiz prescribed Diflucan and cough medicine, and recommended Plaintiff receive extra sack lunches. Plaintiff did not receive the cough medicine or any extra sack lunches.

Plaintiff submitted written medical care requests on September 1, 6, 9, 14, and 18, 2005, complaining of difficulty breathing and the inability to keep food and water down. By September 21, 2005, Dr. Jameson and Defendant Kushner had diagnosed Plaintiff with Valley Fever, and on September 21, 2005, Defendant Kushner ordered Plaintiff admitted to the prison's hospital for persistent pneumonia, weight loss, dizziness, headaches, and weakness. Doctors at the hospital evaluated Plaintiff for disseminated Valley Fever and wanted to attend to Plaintiff's pneumonia, which had progressively worsened.

From September 21, 2005, to October 14, 2005, Plaintiff was in the hospital. Plaintiff was given Diflucan and encouraged to drink liquid, including Ensure. Among other medications, Plaintiff was given tuberculosis (TB) medication, apparently having been misdiagnosed with the disease at some point. Plaintiff continued to suffer the same symptoms, and became depressed and unmotivated.

///

On November 5, 2005, Plaintiff complained to medical staff member Davis that the TB medication was making him sick, and that he had been told by Nurse Mike he did not have TB. Davis said she could not help Plaintiff.

On December 26, 2005, Plaintiff submitted a written request for medical care in which he complained about his spreading rash and stated that the ointment received on December 20 was irritating it.[1] Plaintiff received no response, but was seen on December 28, 2005, by Defendant Benyamah after filing a second written request a day prior complaining about the lack of medical attention. Plaintiff reported to Defendant Benyamah that he was suffering from headaches, joint pain, shortness of breath, burning pain in his gut, liver pain, rashes, chapped lips, exhaustion, and unstable weight but nothing was done.

Plaintiff submitted several more written requests for medical care over the following months but received no response. On March 23, 2006, the day after submitting another request, Plaintiff received a next-day referral to Defendant Benyamah. The next day, Plaintiff was prevented from entering the clinic to see Benyamah by Defendants Diana and Mataras. Plaintiff filed a grievance complaining he was denied access to medical care, and on April 19, 2006, Plaintiff was summoned to the medical clinic, where he told staff member Griffith that his body was burning and itching, and that he had been experiencing liver pain for the past several months. Plaintiff was referred to a doctor but was never seen by either a doctor or a nurse.

On April 21, 2006, a letter was written to the warden on Plaintiff's behalf by the Jeff Dicks Coalition regarding Plaintiff's medical problems and the lack of medical attention. Plaintiff was called to the medical clinic on May 9, 2006, to see Defendant Matter. Plaintiff complained about his rash, Valley Fever, and liver and joint pain. Defendant Matter noted Plaintiff had stomach pain, nausea, little appetite, skin lesions, diarrhea, and a possible staph infection (MRSA). Defendant Matter was rude to Plaintiff, calling him a faker and a troublemaker, but she ordered Omepra for Plaintiff's stomach pain.

---

[1] At this point in the pleading, there is a disruption in the narrative, and it is noted that Plaintiff's hand numbered pages jump from 28 to 31, suggesting that pages 29 and 30 are missing. (2nd Amend. Comp., c.r. pp. 32-33.)

Plaintiff alleges that, as demonstrated by the preceding events, Defendants failed to provide him with constitutionally adequate medical care, and caused him to unnecessarily suffer from August 2005 to January 2007.

### B.    PVSP Medical Director

Defendant Igbinosa is, or during the relevant time was, the Medical Director at PVSP. Under section 1983, Plaintiff must show that a defendant holding a supervisory position personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). There is no respondeat superior liability, and each defendant is only liable for his own misconduct. Iqbal at 1948-49. A supervisor may be held liable for the constitutional violations of his subordinates only if he "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); also Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Here, there are no facts suggesting that Defendant Igbinosa was personally involved in Plaintiff's medical care. Plaintiff alleges that Defendant was responsible for the medical care of all prisoners at PVSP, supervised medical staff with regard to the delivery of health care services, and had the authority to approve and order medical tests and supplies. Plaintiff alleges that Defendant was "basically" in charge of ensuring that staff provided proper medical care to prisoners. (Doc. 29, 2nd Amend. Comp., court record p. 12.)

These allegations suggest that Plaintiff is attempting to impose liability on Defendant Igbinosa solely based on the failings of subordinate medical staff. There is no indication that Defendant was personally involved in the alleged violation of Plaintiff's rights, and Defendant may not be held liable under section 1983 for constitutional violations committed by his subordinates. The Court finds that Plaintiff fails to state a claim against Defendant Igbinosa.

### C.    Treating Doctors and Other Medical Staff Members

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096

1  (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 295 (1976)).  The two part
2  test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by
3  demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or
4  the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was
5  deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059
6  (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th
7  Cir. 1997) (en banc) (internal quotations omitted)).  Deliberate indifference is shown by "a
8  purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused
9  by the indifference." Id. (citing McGuckin, 974 F.2d at 1060).

10      Further, "[a] difference of opinion between a prisoner-patient and prison medical authorities
11  regarding treatment does not give rise to a s 1983 claim," Franklin v. Oregon, 662 F.2d 1337, 1344
12  (9th Cir. 1981) (internal citation omitted), and a difference of opinion between medical personnel
13  regarding treatment does not amount to deliberate indifference, Sanchez v. Vild, 891 F.2d 240, 242
14  (9th Cir. 1989).  A plaintiff must allege sufficient facts to support a claim that "the course of
15  treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that
16  they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v.
17  McIntosh, 90 F.3d 330, 332 (9th Cir. 1986) (internal citations omitted).

18      Plaintiff's allegations falls short of stating any plausible claims for violation of the Eighth
19  Amendment arising from deficient medical care.  Iqbal at 1949-50; Moss at 969.  "Deliberate
20  indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).
21  "Under this standard, the prison official must not only 'be aware of the facts from which the
22  inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also
23  draw the inference.'" Toguchi, 391 F.3d at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837,
24  114 S.Ct. 1970 (1994)).

25      Speaking to Plaintiff harshly, humiliating him, and roughly removing his clothing are not
26  constitutional violations.  The failure to provide medical treatment, on the other hand, *may* be
27  sufficient to support a claim for violation of the Eighth Amendment, but there are insufficient facts
28

upon which to base a finding that in turning Plaintiff away, failing to respond to his written requests, and/or failing to do anything when he complained in person, Defendants *knowingly* disregarded an *excessive* risk to Plaintiff's health, Farmer, 511 U.S. at 837, and Plaintiff suffered further harm as a result, McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)). Finally, Plaintiff's mere disagreement with the medical assessment and course of treatment prescribed for him do not support a claim under section 1983. Jackson, 90 F.3d at 332; Franklin, 662 F.2d at 1344.

Plaintiff unquestionably had serious medical needs and those have been adequately pled. However, the complaint does not set forth sufficient facts linking any of the named defendants to the violation of Plaintiff's constitutional rights because Plaintiff's allegations do not show more than the mere possibility of misconduct, which is not sufficient to state a claim. Iqbal at 1949-50; Moss at 969. Plaintiff will be provided with one more opportunity to amend.

Plaintiff is cautioned that he need not and should not file a long complaint listing each and every single fact, however tangential, relating to his medical condition and what occurred between 2005 and 2007. Rather, when it comes to the involvement of each named defendant, Plaintiff need only more specifically describe how or why their actions rose to the level of deliberate indifference as distinguishable from negligent or merely disagreeable conduct.

### D.   Claims for Equitable Relief

In addition to damages, Plaintiff seeks a declaration and an injunction mandating a complete medical evaluation and treatment. Plaintiff is currently housed at Salinas Valley State Prison. Because Plaintiff is no longer at PVSP, his requests for equitable relief are moot. S.E.C. v. Gemstar-TV Guide Int'l, Inc., 367 F.3d 1087, 1091 (9th Cir. 2004); also Nelson v. Heiss, 271 F.3d 891, 897 (9th Cir. 2001); Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991). In the event Plaintiff is able to amend to state a claim, he may seek damages from Defendants in there individual capacities, but is barred from seeking equitable relief.

///

///

### IV. Conclusion and Order

Plaintiff's second amended complaint does not state any cognizable claims for relief under section 1983 for violation of the Eighth Amendment. In light of the change in the standard governing the screening of complaints and because Plaintiff may be able to cure the deficiencies in his claims, Plaintiff shall be granted another opportunity to amend. Moss at 972; Al-Kidd v. Ashcroft, 580 F.3d 949, 977 (9th Cir. 2009); Lopez, 203 F.3d at 1130; Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his third amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff's third amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal at 1948-49. There is no respondeat superior liability, and each defendant is only liable for his or her own misconduct. Iqbal at 1948-49. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supercedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220. Therefore, "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Plaintiff's second amended complaint, filed March 6, 2009, is dismissed for failure to state a claim upon which relief may be granted;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a third amended complaint; and

9

4. If Plaintiff fails to file a third amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.

**IT IS SO ORDERED.**

**Dated:**   **July 8, 2010**                                     /s/ **Sandra M. Snyder**
                                                                         UNITED STATES MAGISTRATE JUDGE